**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| FELIX L. SORKIN, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-06-1318 |
| § | |
| DAYTON SUPERIOR CORPORATION, § | |
| *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND OPINION**

Felix Sorkin, a Texas citizen, sued Dayton Superior Corporation and South Coast Steel Service, Inc., a California company, alleging that the defendants manufactured and sold a "construction chair" that infringed U.S. Patent No. 5,791,095. South Coast has moved to dismiss for lack of personal jurisdiction. (Docket Entry No. 7). Sorkin has responded, (Docket Entry No. 11), and South Coast has replied, (Docket Entry No. 17). Based on the pleadings, the motion, response, and reply, the parties' submissions, and the applicable law, this court grants the motion to dismiss South Coast from this lawsuit. The reasons are set out below.

**I.   Background**

In this suit, Sorkin asserts that Dayton manufactured the infringing product and that South Coast was a distributor, selling the product to customers, end users, and to other distributors. South Coast moved to dismiss and submitted an affidavit to support its

1

argument that it had no connections with the State of Texas, general or specific. South Coast's president, Glenn Gross, stated in his affidavit that South Coast was a California corporation with its principal place of business in Anaheim, California; was not incorporated, licensed, or represented by a registered agent in Texas; had not consented to suit in Texas; has never had an office, address, or other place of business or facility in Texas; owns no property in Texas; has no inventory, assets, or bank accounts in Texas; is not listed in any telephone or business directory in Texas; has paid no unemployment or other taxes in Texas; has not contracted with a Texas resident or performed a contract in Texas; and has never advertised its products in Texas. (Docket Entry No. 7, Ex. 1).

In response, Sorkin filed a shipping label showing that a Todd Stevens of Southwest Post-Tension, Modesto, California, sent a shipment to Sorkin and his company, third-party defendant General Technologies, Inc., in Stafford, Texas. Sorkin argues that this label shows that "South Coast sold over 200 of the infringing products to a distributor that sold and shipped the infringing product directly to a customer in Texas." (Docket Entry No. 11 at 2–3). Sorkin argues that this shows that South Coast purposefully shipped the accused product into Texas through an established distribution channel. Sorkin also argues that South Coast purchases products from General Technologies in Texas. (*Id.* at 5).

In response, South Coast presents competent evidence in the form of an affidavit from Todd Stevens at Post-Tension Systems, Inc., the distributor that sent the product to Sorkin, showing that "Sorkin himself set up a single transaction for the apparent purpose of concocting evidence that would enable him to defeat South Coast's challenge to personal

2

jurisdiction in Texas." (Docket Entry No. 17 at 1). The affidavit from Stevens that South Coast submitted states that Stevens is a sales manager for Southwest Post-Tension Systems, Inc., located in North Las Vegas, Nevada. Stevens stated that around May 22, 2006, more than a month after Sorkin filed this lawsuit, he received a telephone call from a General Technologies, Inc. salesperson. That salesperson asked Stevens to buy two boxes (200 pieces) of the accused product from South Coast and ship the boxes to Sorkin at the General Technologies office in Stafford, Texas. The ostensible reason for the request was to allow General Technologies to compare the South Coast product with its own product. On May 24, 2006, Stevens went to the South Coast office in Benicia, California and bought two boxes of the accused product, paying $146.78. Stevens shipped the product to Stafford, Texas the following day. Stevens did not tell anyone at South Coast why he was buying the boxes or that he was intending to ship them to a purchaser in Texas. (Docket Entry No. 17, Ex. 1).

Gross also submitted another affidavit. He stated that he knew Stevens who, through his previous employer, had been a South Coast customer for approximately 20 years. Before the May 2006 transaction, Stevens had used all the products he bought from South Coast in California. Gross stated that based on South Coast's prior dealings with Stevens, South Coast did not know, and had no reason to believe, that a product it sold Stevens would be used in or sent to Texas. (Docket Entry No. 17, Ex. 2).

**II.     Analysis**

When a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. *Wyatt v. Kaplan*, 686

3

F.2d 276, 280 (5th Cir.1982). The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices. *Id.* This court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction. *Id.*

The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume personal jurisdiction over a nonresident defendant unless the defendant has meaningful "contacts, ties, or relations" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). Jurisdiction may be general or specific. When a defendant has "continuous and systematic general business contacts" with the forum state, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984), the court may exercise "general" jurisdiction over any action brought against that defendant. *Id.* at 414 n.9. If the contacts are less pervasive, the court may still exercise "specific" jurisdiction in a suit arising out of or related to the defendant's contacts with the forum. *Id.* at 414 n.8; *Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). This case presents only the question of specific jurisdiction; Sorkin acknowledges that there is no basis for general jurisdiction over South Coast.

A federal court may satisfy the constitutional requirements for specific jurisdiction by a showing that the defendant has "minimum contacts" with the forum state such that imposing a judgment would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. In *Nuovo Pignone v. STORMAN ASIA M/V*, 310 F.3d 374 (5th Cir. 2002), the Fifth Circuit consolidated the personal jurisdiction inquiry into a

4

three step analysis: "(1) whether the defendant . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Id*. at 378.

Sorkin invokes the stream-of-commerce and the effects bases for personal jurisdiction. In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980), the Supreme Court stated that a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." Later, a divided Supreme Court addressed the requirements of the stream of commerce theory. In *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987), four Justices stated that to be subject to personal jurisdiction, a defendant must do more than simply place a product in the stream of commerce. *Id.* at 112. Four other members of the Court believed that a defendant who places goods in the stream of commerce benefits from the forum state so that the inquiry into any additional conduct by the defendant is unnecessary. *Id*. at 117 (Brennan, White, Marshall, & Blackmun, JJ., concurring in part and concurring in the judgment). The Fifth Circuit has held that "foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." *Luv n' care, Ltd.*, 438 F.3d at 469; *Ruston Gas Turbines v. Donaldson Co*., 9 F.3d 415, 419 (5th Cir. 1993). The Circuit has

explained that "[w]e adopted this position in an effort faithfully to interpret *World Wide Volkswagen* . . . , which holds that a state does not offend due process by exercising jurisdiction over an entity that 'delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.' " *Luv n' care, Ltd.*, 438 F.3d at 469 (quoting *World Wide Volkswagon*, 444 U.S. at 298). Instead, because a defendant who "knowingly benefits from the availability of a particular state's market for its products" should be amenable to suit in that state, the Fifth Circuit "declined to follow the suggestion of the plurality in *Asahi* . . . that some additional action on the part of the defendant, beyond foreseeability, is necessary to 'convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.' " *Luv n' Care, Ltd.*, 438 F.3d at 469 (quoting *Asahi*, 480 U.S. at 112).

Although the Fifth Circuit has decided on a "mere foreseeability" test for stream-of-commerce personal jurisdiction, in deciding the issue of personal jurisdiction in a patent infringement case, the law of the Federal Circuit applies. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994). The Federal Circuit Court of Appeals has not adopted either view of the stream of commerce theory. Instead, in *Beverly Hills Fan*, it concluded that the plaintiff made the required showing under either theory. *Id.* at 1566.

In *Beverly Hills Fan*, the holder of a design patent on ceiling fans sued the defendants in Virginia. The defendants were a company incorporated in the People's Republic of China that manufactured the offending fans in Taiwan, and a company that imported and distributed the fans in the United States. The importer/distributor sold some of the accused fans to a

retail outlet with stores in Virginia. The evidence showed that a manual accompanied the fans identifying the importer/distributor as the source and that the fans came with a warranty that the importer/distributor would honor. The Federal Circuit did not choose between the competing versions of stream-of-commerce jurisdiction demonstrated in the divided opinion in *Asahi*, because "under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing." 21 F.3d at 1566. In determining that the defendants were subject to personal jurisdiction, the court relied on evidence that the "defendants, acting in consort, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Id*. The court relied heavily on the fact that the defendants shipped the fans into the forum state through an established distribution channel. *See id*. at 1565 & n.15 (noting the importance of the established distribution channel). The defendants' intentional conduct subjected them to jurisdiction in the forum state. *Id*.

In this case, the record shows that under the Federal Circuit test, as well as under the less demanding "mere foreseeability" Fifth Circuit test, Sorkin has not shown that South Coast can be subject to specific personal jurisdiction in a Texas court. Jurisdiction did not lie in *World-Wide Volkswagen* because the defendant's products were brought into the forum by the unilateral acts of an unrelated third party. *See World-Wide Volkswagen*, 444 U.S. at 298. Jurisdiction was found in Beverly Hills Fan because the defendant purposefully shipped the fans into the forum by using an intermediary. *Beverly Hills Fan*, 21 F.3d at 1565. Unlike

7

the defendants in *Beverly Hills Fan*, South Coast did not sell or ship the products to an intermediary who it used as an established distribution channel to sell the products in Texas. To the contrary, the uncontroverted statements in the affidavits of Stevens and Gross show that South Coast did not deliver the two boxes of the accused product to Southwest Post-Tension Systems in May 2006 with any knowledge or expectation that the boxes would be shipped to Texas. The affidavits show that South Coast's established distributors do not ship to Texas or sell to consumers in Texas. Although South Coast had a long-standing prior relationship with Stevens through his former employer, Stevens had used all the products he bought from South Coast in California. (Docket Entry No. 17, Exs 1–2).

The record shows that South Coast does not sell the accused product directly to Texas or indirectly through an established distribution channel. The purposeful shipment through an established distribution channel evinces the required purposeful contact. *See Luv n' care, Ltd.*, 438 F.3d at 469; *Beverly Hills Fan*, 21 F.3d at 1565. It is lacking in this case. Because the record shows that there was no foreseeable shipment of the accused product to Texas, personal jurisdiction cannot be based on a stream of commerce theory.

Nor can this court base personal jurisdiction over South Coast on a place of injury theory. Sorkin argues that because he feels the effects of the infringing sales of the accused product in Texas, he may sue South Coast in Texas. The jurisdiction tests adopted by both the Federal Circuit and Texas courts preclude this argument. In *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576 (Fed. Cir.1994), the court reaffirmed the holding in *Beverly Hills Fan* by stating that as a matter of uniform federal patent law,

8

patent infringement occurs where allegedly infringing sales are made. *Id.* at 1578–79. The court added:

> [W]hile it may be appropriate to speak loosely of patent infringement as a tort, more accurately the cause of action for patent infringement is created and defined by statute. *See* 35 U.S.C. § 271(a) (1988). The statute does not speak generally of the "tort of patent infringement," but specifically of a liability that arises upon the making, using, or selling of an infringing article. Thus, the statute on its face clearly suggests the conception that the "tort" of patent infringement occurs where the offending act is committed and not where the injury is felt.

*Philips*, 35 F.3d at 1579.

The result is the same under Texas law. In *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005), the Texas Supreme Court made it clear that allegations of a nonresident defendant's tortious misrepresentations made by telephone to the forum state cannot be the basis for determining specific personal jurisdiction. More broadly, the court expressly rejected personal jurisdiction based on allegations as to where a defendant "directed-a-tort," as opposed to where the defendant had contacts relating to the transaction and events at issue. The court noted that focusing on where the defendant allegedly directed a tort incorrectly emphasized the relationship among the plaintiff, the forum, and the litigation, rather than among the defendant, the forum, and the litigation. The minimum-contacts analysis, by contrast, properly focuses "solely on the actions and reasonable expectations of the defendant." *Id.* at 790 (citing *Burger King*, 471 U.S. at 481–82). The Texas Supreme Court also criticized the "directed-a-tort" test as conflating the jurisdictional inquiry with analysis of the merits, because the nonresident could defeat jurisdiction by

showing that there was no tort. The court noted that the personal jurisdiction outcome should not turn on whether the defendant is sued in tort or contract, but on the defendant's purposeful availment of the forum state. *Id.*

### III.     Conclusion

South Coast's motion to dismiss for lack of personal jurisdiction is granted.

SIGNED on July 28, 2006, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge